UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Brenda Lynn Peterson,

       Plaintiff,

v.

City of Pine River and Pine River police
officers Nathan Gainey and Chelsea
Collette, in their individual and official
capacities,

       Defendants.

No. 13-cv-1015 (JNE/LIB)
ORDER

---

This is a 42 U.S.C. § 1983 case with additional Minnesota state law claims. It is before the Court on the Defendants' motion for summary judgment. For the reasons discussed below, the motion is granted.

**<u>Background</u>**

As an initial matter, it must be noted that there are important discrepancies between the facts on which the attorneys argued their positions at the motion hearing and the facts that appear in the record.

Fundamentally, the case arises out of the mistaken arrest of Plaintiff Brenda Peterson by Pine River, Minnesota police officers Nathan Gainey and Chelsey Collette during a traffic stop in September of 2012. Officer Gainey made the decision to arrest the Plaintiff, believing that she was the subject of two valid warrants out of Hubbard and Wadena Counties. Officer Collette then transported the Plaintiff to the Sheriff's Office for processing.

And there were two valid warrants, for the arrest of a Brenda Marie Peterson. But the Brenda Marie Peterson named and described in the warrants was not the Brenda Peterson whom Officers Gainey and Collette arrested. A different officer discovered that mistake within a few hours of the arrest, and the Plaintiff was quickly released from custody.

Beyond that broad sketch of the event, counsel stated at oral argument that Officer Gainey was initially led to believe that the Plaintiff was the subject of the arrest warrants because, when he ran the Plaintiff's license plate number through the computer in his squad car during the traffic stop, it erroneously provided him with the vehicle registration and warrant information for Brenda Marie Peterson. Unaware of the computer's mistake, the Plaintiff did not dispute that she was the registered owner of the vehicle – because in fact she was. Officer Gainey then contacted his dispatcher to confirm the validity of the two warrants the database showed for the registered owner of that vehicle. When the dispatcher provided that confirmation, Officer Gainey proceeded with the arrest over the Plaintiff's protestations.

Were this what had occurred, the Court would readily conclude that summary judgment for the Defendants is warranted. But this version of the Plaintiff's arrest is not supported by the record. The deposition testimony, affidavits, and documentary evidence before the Court reveal a different set of facts, and it is on that record that the Court must consider the Defendants' motion. *See Engelman v. Deputy Murray*, 546 F.3d 944, 947-48 (8th Cir. 2008) ("While we view the facts in the light most favorable to [the plaintiff], we must only take as true those assertions properly supported by the record."). *See also Walton*, 752 F.3d at 1116 ("District courts must make reasoned 'findings of fact and conclusions of law' sufficient to permit meaningful appellate review of the qualified immunity decision.") (citation omitted).

The centerpiece of the record is the deposition testimony of Officer Gainey. Nothing in the record contradicts Officer Gainey's explanation of what led to the arrest, which is as follows.

While on patrol on September 27, 2012, Gainey observed a vehicle on the streets of Pine River and ran its license plate number through eMERTS, a piece of software for searching public records that he could access from the computer in his squad car. The vehicle was being driven by the Plaintiff's son, for whom eMERTS showed an outstanding arrest warrant. Gainey pulled the vehicle over, confronted the Plaintiff's son about the warrant, and gave him the choice of resolving it by either paying a cash bail or being arrested.

During this stop, the Plaintiff's son made a phone call to his father – the Plaintiff's husband – who soon arrived on the scene driving a different vehicle. Gainey ran the license plate number of that vehicle and returned his attention to the Plaintiff's son, who chose to pay the cash bail. The Plaintiff's son and husband then went on their way. With that issue having been resolved, Gainey looked again at the computer in his squad car. By clicking through the various pages that eMERTS had pulled up in response to his inquiry about the vehicle the Plaintiff's husband had driven to the scene, Gainey saw that the vehicle was registered to the Plaintiff, Brenda Peterson, and that the system had connected two arrest warrants to her vehicle registration information.[1] Gainey made a mental note of the warrants and then completed his shift.

---

[1] Attached to an affidavit, Gainey provided a "true and correct copy of the eMERTS printout." The attorneys agreed that this printout is an accurate representation of the vehicle registration and warrant information that Gainey accessed through eMERTS from his squad car before the Plaintiff was arrested.
    This printout, as well as Officer Gainey's deposition testimony, directly contradicts counsel's assertion at the motion hearing that eMERTS erroneously connected Brenda Marie Peterson's vehicle registration to the Plaintiff's license plate number. The vehicle registration information in the eMERTS printout matches the Plaintiff's driver's license in every respect – first and last name, home address, height, weight, and eye color. There is thus no doubt that the

The next day, Gainey observed the Plaintiff driving the vehicle that her husband had been driving the day before. Gainey again ran the license plate of the vehicle through eMERTS, pulled up the driver's license photo of the registered owner, and saw, as he had the day before, that the system was connecting two arrest warrants to that owner.

Gainey then initiated a traffic stop of the Plaintiff's vehicle. Gainey proceeded to confirm the Plaintiff's identity by comparing her appearance to the photo of the registered owner he had seen on eMERTS. He also checked her driver's license and proof of insurance, both of which showed her name as Brenda Peterson, with no middle name. From that investigation, Gainey concluded – correctly – that the Plaintiff was in fact the registered owner of the vehicle she was driving.

Already knowing that eMERTS had connected two warrants to the registered owner of the vehicle, Gainey then contacted his dispatcher. "[T]o make it easy on dispatch," Gainey gave her the license plate number of the vehicle he had pulled over and asked the dispatcher to run the registered owner of that vehicle. Gainey provided no information to the dispatcher other than the license plate number.

The dispatcher used that license plate number to call up the owner's registration information. Gainey did not know exactly what steps the dispatcher took next, and there is no deposition or affidavit from the dispatcher in the record, but he speculated that she entered the registered owner's name, birth date, and driver's license number into a records database which, just as Gainey himself had already seen twice, connected that owner to the two arrest warrants.

---

vehicle was registered to the Plaintiff, and that eMERTS correctly connected that vehicle's license plate number to the Plaintiff's registration information.

The same attorney represented the Plaintiff at Officer Gainey's deposition and at the motion hearing, which makes the erroneous oral version of the facts especially confounding.

4

(Whether the dispatcher used eMERTS or a different system is not clear from the record.) The dispatcher then informed Gainey of the existence of those warrants.

Gainey next asked the dispatcher to confirm the validity of the warrants by contacting the issuing counties to ensure that the warrants had not already been resolved. The dispatcher subsequently reported to Gainey that the warrants were valid.

Turning to the Plaintiff, Gainey gave her the option of paying the cash bail for the warrants – roughly $800 total – or being arrested. The Plaintiff protested that the warrants were not for her, which Gainey disregarded. Gainey then made the arrest.

After the arrest, Officer Collette, who had arrived on the scene during the traffic stop after hearing about it on her radio, transported the Plaintiff to the Cass County Sheriff's Office. After a short stay there, the Plaintiff was picked up by a different officer to be transported to Hubbard County Jail. En route, that officer concluded that the Plaintiff was not the Brenda Marie Peterson named in the warrants, which he discovered in part by examining a credit card in the Plaintiff's personal property which showed her name as Brenda L. Peterson. That officer immediately returned the Plaintiff to Cass County, where a corrections officer reviewed the files and confirmed that the Plaintiff's arrest had been a mistake. She was quickly released.

The Plaintiff subsequently commenced this action against the Defendants, the City of Pine River and Officers Gainey and Collette. Her Complaint asserts five counts against those Defendants: a 42 U.S.C. § 1983 claim based upon an alleged violation of her Fourth Amendment rights, as well as Minnesota state law negligence and false imprisonment claims against the two officers; and § 1983 and negligence claims against the City of Pine River on a failure to train and supervise theory.

**Discussion**

With discovery now closed, the Defendants have moved for summary judgment on qualified immunity and related grounds.  Discussed below are the Plaintiff's § 1983 claim against Officers Gainey and Collette, her § 1983 claim against the City of Pine River, and her state law claims against all of the Defendants.

### I.  Section 1983 claim against Officers Gainey and Collette.

First, the Defendants seek summary judgment on the Plaintiff's § 1983 claim against Officers Gainey and Collette on qualified immunity grounds.

"On summary judgment, a defendant official is entitled to qualified immunity unless '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'"  *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).  "District courts may consider these two questions in any order, but may not deny qualified immunity without answering both questions in the plaintiff's favor."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Plaintiff contends that, by mistakenly arresting her, Officers Gainey and Collette violated her Fourth Amendment right not to be arrested without probable cause.  In *Hill v. Scott* – also a mistaken identity arrest case – the Eighth Circuit "look[ed] to similar cases where officers mistook the arrestee for the subject of a warrant" and concluded that "[t]he rule in those cases is that mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant."  349 F.3d 1068, 1072 (8th Cir. 2003).  *See also Hill v. California*, 401 U.S. 797, 802 (1971)

6

("When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.").

It was thus clearly established at the time of the Plaintiff's arrest that the Fourth Amendment afforded her the right to be free from an arrest due to an officer's unreasonable mistake of fact regarding her identity.  *See Reichle v. Howards*, 132 S.Ct. 2088, 2095 (2012) ("[T]he right allegedly violated must be established, not as a broad proposition, . . . but in a particularized sense so that the contours of the right are clear to a reasonable official . . . .") (internal citations and punctuation omitted); *Hill v. McKinley*, 311 F.3d 899 ("[A] precedential case need not be on all fours to clearly establish a constitutional violation, but it must be sufficiently analogous to put a reasonable officer on notice that his conduct was unconstitutional.").

At the first prong of the analysis, then, the question becomes whether the facts, viewed in the light most favorable to the Plaintiff, demonstrate that the Defendant officers' mistake was unreasonable.  That determination must be made on the "totality of the circumstances" at the time of the arrest; "hindsight is not the standard."  *Hill v. Scott*, 349 F.3d at 1073.

As explained below, the record demonstrates that Officer Gainey reasonably mistook the Plaintiff for the subject of the warrants.  The Plaintiff's Fourth Amendment rights were therefore not violated, and the Defendant officers are entitled to qualified immunity.

**A. Comparison of identifying information.**

The record shows that the Plaintiff's driver's license and vehicle registration both list her name as Brenda Peterson – no middle name[2] – with a birthdate in 1964, standing 5'4" tall and weighing 110 pounds, with blue eyes, and residing at an address in Pine River, Minnesota. According to the eMERTS printout, the two warrants were issued for Brenda Marie Peterson – also known as Brenda Peterson, Brenda M. Petie, and Brenda Marie Griggs – a white woman with blue eyes and black hair, born in 1964, and residing at an address in Menahga, Minnesota. One of the warrants describes this Brenda Marie Peterson as 5'7" tall and 125 pounds, while the other indicates that she is 5'9" and weighs 120 pounds.

To the Plaintiff, the identifying information in the warrants is irreconcilable with the identifying information in the Plaintiff's driver's license and registration. She argues that Officer Gainey "did not have arguable probable cause to arrest [her] on the warrant" because the discrepancies in the addresses, heights and weights, and birthdates were apparent on the face of the records to which he had access during the traffic stop. In this regard, the Plaintiff cites *Kuehl*

---

[2]   Minnesota law requires drivers to list their full name, including their middle name, on their driver's license and vehicle registration. Minn. Stat. 171.06, subd. 3; Minn. R. 7410.0300, subp. 1; Minn. R. 7410.0100, subp. 3. The Plaintiff appears to be out of compliance. She emphasizes here that her full name is Brenda Lynn Peterson – in fact, she brought this case in that name – but her driver's license, vehicle registration, and proof of insurance do not list any middle name.

Centuries ago, "during the early times in England, when a person had but one name, and that his Christian name[,] his further identification was indicated by some designated physical characteristic, place of residence, or deed of value or virtue." *D'Autremont v. Anderson Iron Co.*, 104 Minn. 357, 358 (Minn. 1908). Later, with the adoption of the system of family names, "the first or Christian name [was] held by the courts of England as the true name . . . for the designation of persons; the middle name, or the initial thereof, being regarded as wholly unimportant." *Id.*

These are different times. The use of middle names and initials may fade in and out of popularity in social and professional settings. *See* Bruce Feiler, *They're Dropping Like Middle Initials*, N.Y. Times, July 11, 2014, at ST2. Minnesota's law, meanwhile, firmly requires license applications – and licenses – to contain the driver's full name, including the middle.

8

*v. Burtis* for the proposition that "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." 173 F.3d 646, 650 (8th Cir. 1999).

The Defendants, however, emphasize the similarities between the description in the warrants and the Plaintiff's identifying information. In particular, the Plaintiff and the wanted woman had the same first and last names, were born just a few months apart, were of the same race, and had similar heights and weights. Therefore, the Defendants argue, Officer Gainey reasonably mistook the Plaintiff for Brenda Marie Peterson, such that the arrest did not violate her Fourth Amendment rights under the *Hill v. Scott* rule. The Defendants also note that the *Hill v. Scott* court distinguished *Kuehl*, in which "the officer was investigating a possible crime after the fact and based his assessment of probable cause for the arrest on his shoddy investigation," from a case like the one at hand involving "a facially valid warrant for the arrest of someone with a description remarkably close to [the plaintiff]." 349 F.3d at 1072.

The Court agrees with the Defendants. The question is not whether Officer Gainey had probable cause to make a warrantless arrest, which would turn on whether he reasonably believed that the Plaintiff had committed a crime. *See, e.g., U.S. v. Allen*, 713 F.3d 382, 386 (8th Cir. 2013). The question is whether Officer Gainey reasonably believed that the Plaintiff was the subject of two already-existing and admittedly valid warrants for the arrest of Brenda Marie Peterson.

On that score, it would have been eminently reasonable for Officer Gainey to have mistaken the Plaintiff for the wanted woman based on a comparison of the records before him during the traffic stop. Judicial, if not common, experience demonstrates that there are often discrepancies between public records that in reality do relate to the same person:

9

> [W]e live in an age where altering physical features may be accomplished with facility, . . . where clerical errors in recording, receiving, or transmitting data are commonplace, . . . and where descriptive inaccuracies can occur easily. Thus, courts have concluded with some regularity that relatively minor discrepancies in physical features or other data do not render unreasonable an arrest pursuant to a facially valid warrant.

*Brady v. Dill*, 187 F.3d 104, 114 (1st Cir. 1999). *See also Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir. 1987) (arrest reasonable where plaintiff had same name and race, but different address and birthdate, from subject of warrant); *Rodriguez v. Farrell*, 280 F.3d 1341, 1347-48 (11th Cir. 2002) (arrest reasonable where plaintiff had same name, age, and race, but different address, Social Security number, and height, from subject of warrant).

Last names can change due to marriage and, less innocently, people do adopt aliases and provide different birthdates, even on official documents. Furthermore, as the Plaintiff's own records attest, middle names may be used sometimes but not others. Indeed, one of the "AKAs" listed in the warrants for Brenda Marie Peterson was simply "Brenda Peterson"; the driver's license and proof of insurance the Plaintiff provided to Officer Gainey, as well as her vehicle registration, identified her by that exact name.

In addition, these warrants were old: the one from Wadena County dated to 2000, while the Hubbard County warrant issued in 2005. The years that had elapsed between then and the traffic stop provided ample time for the wanted woman to have moved away from her address in Menahga. Fluctuations in weight over the years have also been known to occur. In fact, these two warrants – which everyone apparently believes to be for the same individual – describe that person as 5'9" and 120 pounds in 2000, but 5'7" and 125 pounds in 2005. Why that discrepancy should be excusable as between the two warrants, but not between the warrants and the driver's license and registration, is not apparent.

On the whole, then, there is nothing in the records to which Officer Gainey had access during the traffic stop that would suggest that it was unreasonable for him to conclude that the Plaintiff was the wanted woman described in the warrants that eMERTS had connected to the Plaintiff's vehicle registration.

### B. Failure to investigate discrepancies.

With that said, there is a difficulty with the Defendants' argument. The reasonableness of Officer Gainey's mistake must be judged on the actions he took and the totality of the circumstances in which he took them. But the record contains no evidence that Gainey actually was relying on the similarities between the warrant's description of the wanted woman and the Plaintiff's identifying information when he made the arrest. In fact, there is no evidence before the Court that Gainey ever examined the warrants or the Plaintiff's driver's license (and/or registration information) closely enough to notice that the wanted woman and the Plaintiff were of the same age and had a similar physical description.

What Gainey's uncontroverted deposition shows is that he made the arrest in reliance on the connection eMERTS made between the Plaintiff's vehicle registration and the two warrants. According to his own testimony, Gainey did not investigate whether that connection was accurate before making the arrest.

Relevant here, then, is the Plaintiff's contention that Gainey's failure to scrutinize the differences between the information in the warrants and the Plaintiff's driver's license was itself unreasonable. In particular, the Plaintiff points out that the eMERTS system provides a confidence rating, indicating the degree to which the information in a record corresponds to the

11

user's inquiry. In this case, both of the warrants show a score of 94 out of 100, which, the Plaintiff's argument goes, should have alerted Gainey that he had the wrong woman.

However, the Plaintiff could point to no record evidence that would explain the significance of this 94 rating, how commonplace it was for eMERTS to score a record at less than 100, or how often records rated below 100 actually did or did not relate to the subject of the inquiry. The factual record appears to go only so far as Officer Collette's deposition testimony, in which she explained that a rating below 100 could simply indicate that the record at issue contained an alias for the subject of the inquiry in addition to her proper name. Officer Collette also offered that "there are times where I've seen warrants come up with a score that is less than 100 and it is still that correct person" – in other words, where warrants rated below 100 are still good "hits." There is no competing evidence in the record that would suggest that Officer Gainey's reliance on the connection eMERTS drew between the warrants and the Plaintiff in this circumstance was unreasonable.

Moreover, even if Gainey should not have relied on eMERTS and should have noticed and scrutinized the discrepancies between the warrants and the Plaintiff's identifying information, what he would have found would not have made his decision to arrest unreasonable. The differences between the records would have injected some degree of doubt into the event, but, as explained above, they are not "plainly exculpatory" as the Plaintiff would have it.

As the *Hill* court put it in rejecting the same argument the Plaintiff advances here,

> [t]he issue is whether [the arresting officer's] failure to investigate the [discrepancies] violated [the plaintiff's] Constitutional rights, and whether a reasonable officer would know such a failure would be a Constitutional violation. This is not a situation where [the officer] knew [the plaintiff] was not the subject of the warrant, or where [the officer] knew further investigation would have revealed there was no warrant for [the plaintiff]. This is a case where further investigation would have cast doubt on whether [the plaintiff] was the subject of the warrant. But that is always the case where an arrestee denies being the subject

12

of a facially valid warrant; there can always be more investigation to verify identity. The question is, how much investigation does the Constitution require? In light of all the circumstances, we hold [the arresting officer] had sufficient consistent identifying information to reasonably conclude the warrant was for [the plaintiff] and no reasonable officer would have known failing to investigate further would violate the Fourth Amendment.

349 F.3d at 1073-74.

"The law does not require law enforcement officers to conduct a perfect investigation to avoid suit for false arrest." *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013). Even if it would have been advisable under the circumstances for Officer Gainey to have been more alert to the differences between the records before him during the traffic stop, that scrutiny would not have negated the reasonableness of his mistaken belief that the Plaintiff was the subject of the warrants.

The Defendant officers are therefore entitled to qualified immunity.

### II. Section 1983 claim against Pine River.

Second, the Defendants seek summary judgment on Peterson's § 1983 claim against the City of Pine River. Because the record demonstrates that the Plaintiff's Fourth Amendment rights were not violated, this claim against Pine River necessarily fails and summary judgment is appropriate.

Furthermore, even if the Plaintiff's arrest did amount to a Fourth Amendment violation, she has failed to show that there is sufficient factual content in the record to create a triable issue as to Pine River's liability. Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). As a result, a

municipality can be liable under § 1983 only in two ways: "if an action or policy itself violated federal law, or if the action or policy was lawful on its face but led an employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to the known or obvious consequences." *Pietrafeso v. Lawrence County*, 452 F.3d 978, 982 (8th Cir. 2006) (citation omitted).

Peterson's Complaint alleges the second type of municipal liability – that Pine River is liable for the alleged violation of Peterson's Fourth Amendment rights because its "policies and customs . . . resulted in inadequate training and supervision of its police department employees, including Defendant Officers Gainey and Collette . . . ."

In this respect, the Plaintiff points to Officer Gainey's deposition testimony, in which he stated that Pine River did not put him through "a course specifically focused on arrest warrants." Gainey also testified that the city did train him to use the police department's computer system, and that he had been trained on executing arrest warrants prior to being hired, during his studies for his Associate's degree in law enforcement. Nevertheless, the Plaintiff asserts that a jury could conclude that Pine River's lack of a training course for its officers specifically focused on arrest warrants caused her mistaken arrest.

Construing the record in the Plaintiff's favor, that could well be true. However, a municipality will not be liable under § 1983 for simply failing to train its employees on a given topic, even where that failure causes an employee to commit a constitutional violation. Rather, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 131 S.Ct. 1350, 1359-60 (2011) (citing *Canton,* 489 U.S. at 388). *See also Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) ("A city also may be liable for

deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality,'. . . ; and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury.").

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of County Com'rs of Bryan County, Okl. V. Brown,* 520 U.S. 397, 410 (1997)).  A plaintiff may meet the deliberate indifference standard by showing that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, [yet they] choose to retain that program."  *Id.*

There is no hint anywhere in the record that Pine River was deliberately indifferent to the Fourth Amendment rights of its citizens by not training its police officers on executing arrest warrants.  The Plaintiff has not identified any record evidence that would create a triable issue regarding whether unreasonable mistaken identity arrests were a known or obvious consequence of the absence of such a training program, nor is there any evidence as to whether any other mistaken identity arrests had ever been made by Pine River officers.  There is no basis in the record on which Pine River could be deemed to have had actual or constructive notice that its police force was violating its citizens' constitutional rights, much less that the city ignored those problems.

Pine River is therefore entitled to summary judgment on the Plaintiff's § 1983 claim against it.

### III. State law claims against all Defendants.

Third, the Defendants seek summary judgment on the Minnesota state law claims. The Defendants argue that the negligence and false imprisonment claims asserted against Officers Gainey and Collette are barred by the doctrine of official immunity, and that the negligence claim asserted against Pine River is barred by vicarious official immunity. They are, and it is.

In Minnesota,

> [i]n general, a public official charged by law with duties calling for the exercise of discretion is not personally liable to an individual for damages. . . . "Official immunity" is intended to free public officials from the fear of liability that might inhibit them from discharging their discretionary duties. . . . There are two exceptions to the general rule precluding liability: where the duty performed is ministerial not discretionary, or where the official acts with malice.

*Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 (Minn. 1999) (internal citations omitted).

Here, the first exception to official immunity – for ministerial acts – does not apply:

> While it is true that police conduct is indeed guided by a variety of regulations as well as case-developed law and legislative enactments, the conduct of police officers in responding to a dispatch or making an arrest involves precisely the type of discretionary decisions, often split-second and on meager information, that we intended to protect from judicial second-guessing through the doctrine of official immunity. . . . Each [arrest] situation is unique and requires the exercise of judgment by the officer based upon the objective circumstances of the moment.

*Id.* at 665.

The second exception – for official acts done with malice – is foreclosed by the qualified immunity analysis above. Malice here "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (quoting *Carnes v. St. Paul Union Stockyards Co.*, 205 N.W.2d 630, 631 (Minn. 1925)). Because the Defendant officers had a legal justification for arresting the Plaintiff – i.e., they "reasonably mistook" her for the subject of the warrant – they cannot be found to have acted with malice.

Finally, because Officers Gainey and Collette are entitled to official immunity, the City of Pine River is entitled to vicarious official immunity on the state law claim asserted against it. *See Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998) ("When applicable, vicarious official immunity protects the government entity from suit based on the official immunity of its employee.  In prior cases, '[g]enerally, if the employee is found to have immunity, the claim against the municipal employer has been dismissed without explanation.'") (citation omitted).  The Plaintiff offers no reason why this principle does not hold here.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [ECF No. 23] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 29, 2014                                      s/Joan N. Ericksen
                                                          JOAN N. ERICKSEN
                                                          United States District Judge